UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULA PRUITT,

    Plaintiff,

vs.                                                    Case No. 14-12696

AFSCME COUNCIL 25, AFSCME LOCAL 2650,      HON. AVERN COHN
AL GARRETT, and SANDRA CRAYTON,

    Defendants.

_____/

**DECISION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 14)
AND DENYING PLAINTIFF'S MOTION TO AMEND (Doc. 17)
AND DISMISSING CASE**[1]

I. Introduction/Summary of Decision

This is a labor case arising out of an employment dispute. Plaintiff Paula Pruitt, proceeding pro se, is suing defendants AFSCME Council 25 and its affiliated AFSCME Local 2650 (collectively, the Union), Al Garrett, President of AFSCME Council 25, and Sandra Crayton, President of AFSCME Local 2650. As will be explained, Pruitt was terminated from her position as a Nurse Assistant II at McLaren Regional Medical Center-Flint[2] for harassing and threatening another employee. The Union represented

---

[1] Although this matter was originally scheduled for hearing, upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2] Pruitt also has a case pending before the undersigned against McLaren Regional Medical Center-Flint and several individuals, case no. 14-12074.

Pruitt in arbitration; the arbitrator upheld her termination. In broad terms, Pruitt claims that the Union failed to provide her with fair representation during the arbitration process, resulting in a violation of her right to due process under 42 U.S.C. § 1983 and causing her emotional distress.

Before the Court is the Union's motion for summary judgment and Pruitt's motion for leave to file an amended complaint. For the reasons that follow, the Union's motion will be granted and Pruitt's motion will be denied. The case will be dismissed.[3]

As will be explained, none of Pruitt's claims under federal law, whether as currently plead or as she proposes to amend, carry the day. Regarding her claims under federal law, the Union cannot be sued for discrimination under § 1983, the Union fairly and throughly represented Pruitt in arbitration, and there is no evidence the Union discriminated against her in the way it pursued her grievance.

Finally, Pruitt's claim under state law for intentional infliction of emotional distress will be dismissed without prejudice to her right to pursue it in the state courts.

## II. Background

### A. Factual

The material facts as gleaned from the parties' papers follow:[4]

Pruitt was an employee of McLaren Regional Medical Center (Hospital). The

---

[3]Pruitt recently filed a Motion for Court Appointed Attorney. (Doc. 21). Given the ruling on the pending motions, Pruitt's motion for a court appointed attorney is MOOT.

[4]The Union did not file a statement of material facts not in dispute in separately numbered paragraphs as required in the Court's motion practice guidelines. Pruitt did not file a response to the Union's motion; instead, she filed a motion for leave to amend her complaint. Be that as it may, the record is sufficiently clear so as to enable a decision on the pending motions.

Hospital is privately owned with locations throughout mid-Michigan. Pruitt was employed as a Nurse Assistant II, a classification whose terms and conditions of employment are contained within the collective bargaining agreement (CBA) between the Hospital and the Union and its affiliated Local 2650. Local 2650 is a bargaining unit which represents various classifications employed by the Hospital. Local 2650 is affiliated with the Union, which is a statewide labor organization employing professionals such as Staff Representatives, Staff Specialists, and Staff Attorneys, who assist local union officers in a variety of functions, including collective bargaining, grievance processing, as well as providing advocacy in various proceedings including arbitrations.

On March 12, 2013, Pruitt was issued a Step 1 verbal warning by her supervisor, Cathleen Hipps. The stated reason for discipline was Pruitt's alleged failure to answer call lights and failure to clean and change a patient's soiled linens during two previous shifts. During the subsequent arbitration, Hipps testified that Pruitt became very vocal and upset when issued the discipline.

On March 26, 2013, Pruitt met with Hipps to receive her performance evaluation. Plaintiff received a rating of 2.15 out of a possible 5 points, which rates as "partially meets expectations." Hipps further testified at arbitration that Pruitt became "enraged" and argued with her about the evaluation.

Approximately five days later, Hipps found two voice messages on her work phone. The first message had been left at 10:42 the previous evening, and simply stated: "You's [sic] a stupid bitch."

The second message was left at 11:26 the previous evening, and was about one minute long. Hipps went to the employer's Human Resources office and played the

message for Teea Moore, the Senior Human Resource Consultant. Moore later had the message transcribed. The message said:

> I wanna [sic] give you something to think about. You're in a position of power and watching over people and also watching over employees and you take that to your advantage. I don't know how you sleep at night. God does not like ugly. I hope you listen to these words and know that the things you do to your patients and to your employees is despicable. You gon [sic] burn in hell for it! Have your patients and your employees having problems because of your evilness. And God is going to make you pay for it! I hope you let everybody hear this! You will be getting a lawsuit filed against you for the shit you do to people and the unfairness that you do to people and the stress you bring upon people's lives! You think about that when you think about different things and tragedies that's happened in your own life. Sit and think about that! You gon [sic] rot in hell! You's [sic] a bitch!

The Hospital employees immediately suspected Pruitt as the unidentified caller. Testimony during the arbitration hearing revealed that, after listening to the voicemail, Moore located Pruitt in the building and interviewed her, with a union representative present. During the interview, Pruitt denied leaving the messages, but did not provide any details about her whereabouts at the time the calls were made. Moore's interview notes indicate that Pruitt initially denied having a cell phone at all, but later stated she had a cell phone for emergencies. Pruitt was suspended at the end of the interview.

On April 5, 2013, Pruitt was terminated. The stated reason for termination was that Pruitt had left two inappropriate and threatening messages on her supervisor's office voicemail. The Hospital took the position that this conduct violated Human Resource Policies 405, 410 and 0130. HR Policy 405 addresses "Personal Appearance and Behavior" and the section addressing conduct includes a statement that the Employer maintains a "zero tolerance" policy for "intimidating and/or disruptive

4

behavior," including harassment, vulgarity, abuse, or any such behavior which. . . is unduly offensive to others," and including "insulting, demeaning, humiliating. . . a co-worker." HR Policy 410 is entitled "Corrective Action Program," and contains both major and minor infractions. The notice of termination cited a violation of item 16, under major infractions, which states: "Conduct of an indecent or seriously inappropriate nature which creates an adverse impact on MHCC/MRMC or any employee/group." HR Policy 0130 is entitled "Harassment and Discrimination." The policy prohibits unwelcome or offensive conduct or communication "based on race, color, national origin, religion, sex, sexual orientation, age, height, weight, marital status, disability, genetic information, veteran status, or any other protected status."

 On April 10, 2013, the Union filed a grievance protesting Pruitt's termination. The grievance was denied at Step 2 on August 2, 2013. On August 13, 2013, the Union appealed to arbitration. On December 20, 2013, the advocate assigned to handle Pruitt's grievance, William Farmer, spoke on the phone with Pruitt and Crayton about her case and scheduled a preparatory meeting. On December 27, 2013, Farmer met with Pruitt and Crayton at the Local 2650 offices in Flint. During the meeting, which lasted approximately two hours, all aspects of Pruitt's grievance were discussed, including potential witnesses, the timeline and sequence of events, the materials which the Hospital was likely to present, and in particular, the cell phone issue.

 Although Pruitt says otherwise, defendants say that neither the Union or any agent of the Union take Pruitt's cell phone without her permission. The Union says that Pruitt handed her cell phone to either Farmer or Crayton so they could figure out which carrier provided service. This was done in an attempt to produce call records which

would show no calls were made from the phone as the Hospital alleged. In any event, the manner in which Pruitt's cell phone was procured is not material to her claims.

The arbitration hearing took place on February 6, 2014. Farmer represented Pruitt at the hearing. Hipps, Moore, and Lisa Rogers, the Director of Human Resources, testified on behalf of the Hospital. Pruitt was the only witness who testified on her behalf. After taking testimony and receiving evidence, the Arbitrator closed the hearing. The Union submitted a post-hearing brief in support of Pruitt's grievance.

On April 17, 2014, the Arbitrator issued an Opinion and Award. The Arbitrator framed the issue for decision as follows: "[d]id the Employer have just cause for terminating the employment of Paula Pruitt on April 5, 2013? If not, what is the remedy?"

The Arbitrator first made a factual determination that Pruitt had made the calls and left the messages to Hipps. The Arbitrator then turned to the question of whether the discharge was the appropriate penalty, in light of all the evidence. The Arbitrator considered the various HR Policies of which Pruitt was accused of violating, in light of the evidence as well as the arguments advanced by the Union and the Hospital. The Arbitrator accepted the Union's argument that, even if Pruitt left the messages, she had not violated HR Policy 0130, because there was no indication that any protected status was involved. However, the Arbitrator found that the messages were of a harassing nature, and particularly offensive, since they appeared to reference the recent death of Hipps' husband, and this conduct was prohibited under Policy 405. Further, the Arbitrator reasoned that the anonymous nature of the messages contributed to their threatening nature, and the severity of their inappropriateness constituted a major

6

violation of Policy 410. Having found that Pruitt violated two of the three HR Policies alleged, the Arbitrator then reasoned that termination was appropriate considering the severity of the offenses, and that Pruitt's conduct in leaving the messages appeared to spurred by the attempts by Hipps to correct Pruitt's behavior, i.e. the March 12 verbal warning and the March 26 evaluation. The Arbitrator reasoned that if these attempts at correcting Pruitt's behavior were clearly unsuccessful, and led only to the messages being left on Hipps' voicemail, it was difficult to see how Pruitt could re-establish a working relationship with Hipps.

Days after the Arbitrator's decision, on April 27, 2014, Pruitt faxed a letter to the Union's Arbitration Department requesting an appeal of the arbitration decision. On May 5, 2014, the Union's Arbitration Director, Herb Sanders, notified Pruitt that the Union had decided not to further pursue her grievance.

### B. Procedural

On July 9, 2014, Pruitt filed her complaint against defendants. The complaint is in three counts, phrased by Pruitt as follows:

| | |
|---|---|
| Count I | Union refused the right of fair representation. Union refused to pursue the grievance of protected class worker (Harassment); union official failed to respond to plaintiff's complaint because of personal reasons. |
| Count II | Taft-Hartley Act for intentional misconduct, intentional infliction of emotional distress and breach of duty of fair representation |
| Count III | Intentional infliction of emotional distress of plaintiff by defendants |

In reading the body of the complaint and affording a liberal construction, Count I asserts a claim under 42 U.S.C. § 1983 for violation of her constitutional rights. Count II asserts

a breach of the Union's duty of fair representation under federal law. Count III asserts a claim under state law.

On September 8, 2014, the Court held a status conference with the parties after which it issued a scheduling order. The scheduling order (Doc. 13) provides in relevant part:

> Defendants will file a motion for summary judgment within 21 days. Plaintiff shall file a response to the motion 21 days thereafter. Defendants will have 10 days to file a reply. After receipt of the papers, the Court will determine whether to set the motion for hearing or decide it on the papers.

On September 29, 2014, defendants filed the instant motion for summary judgment. Pruitt did not file a response to defendants motion. Instead, on October 14, 2014, she filed a motion for leave to amend the complaint. Defendants filed a response to Pruitt's motion and Pruitt filed a reply. Both motions are ready for decision.

### III. Motion for Summary Judgment

#### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion

>only), admissions, interrogatory answers, or other materials; or
>
>(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

>If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
>(1) give an opportunity to properly support or address the fact;
>
>(2) consider the fact undisputed for purposes of the motion;
>
>(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
>(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, id. at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," Hager v. Pike County Bd. Of Education, 286 F.3d 366, 370 (6th Cir. 2002).

B. Analysis

As an initial matter, the fact that Pruitt did not file a response to defendants' motion does not automatically mean that defendants are entitled to a ruling in their favor. Rather, the Court must examine the record to determine whether there are genuine issues of material fact and/or whether Pruitt's claims fail as a matter of law. See Carver v. Bunch, 946 F.2d 451, 454–55 (6th Cir. 1991); cf. Advisory Committee Note on 1963 Amendment to Subdivision (e) of Fed R. Civ. P. 56 (explaining that the amendment was not "designed to affect the ordinary standards applicable to the summary judgment motion," and that "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented").

### 1. Count I - Violation of § 1983

Defendants argue that this claim must be dismissed as a matter of law because they are not subject to liability under § 1983. The Court agrees.

"To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." Waters v. City of Morristown, 242 F.3d 353, 358–59 (6th Cir.2001) (citation omitted). In Lugar v. Edmondson Oil Co., the Supreme Court held that "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." 457 U.S. 922, 937 (1982).

Moreover, "[a] plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct ." Tahfs v. Proctor, 316 F.3d

584, 590 (6th Cir.2003) (quoting, in part, Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)). Yet, "[i]f a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983 ...." Cooper v. Parrish, 203 F.3d 937, 952 n. 2 (6th Cir.2000). "A private actor acts under color of state law when its conduct is 'fairly attributable to the state.' " See Romanski v. Detroit Entm't, L.L.C., 428 F.3d 629, 636 (6th Cir.2005) (citation omitted); see Memphis, Tenn. Local, Am. Postal Workers Union, AFL–CIO v. City of Memphis, 361 F.3d 898, 905 (6th Cir.2004).FN4

In general, three tests apply to determining whether a private entity acted under the color state law: "(1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." Romanski, 428 F.3d at 636 (citations omitted). But these three "tests are 'relevant only in cases in which there are no allegations of cooperation or concerted action between state and private actors.' " Revis v. Meldrum, 489 F.3d 273, 290 (6th Cir.2007) (quoting, in part, American Postal Workers Union, Local 96 v. City of Memphis, 361 F.3d 898, 900–01 (6th Cir.2004)).

Neither the union nor the individual defendants are alleged to have engaged in a public function, nor are their any allegations that the state had any influence over the arbitration process or that there is a nexus between defendants and the state. Simply put, there is nothing in the complaint which could plausibly be read, nor could a reasonable juror conclude, that defendants are state actors subject to liability under § 1983. Defendants are entitled to judgment on Count I.

### B. Count II - Breach of Duty of Fair Representation

11

As a general matter, federal courts have jurisdiction under 28 U.S.C. § 1337 to hear a claim for breach of a union's duty of fair representation without an accompanying claim for breach of contract under § 301. Storey v. Local 327, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers, 759 F.2d 517, 523 (6th Cir. 1985). A union breaches its duty of fair representation when its conduct toward a member of the union is arbitrary, discriminatory, or in bad faith. Vaca v. Sipes, 386 U.S. 171, 190 (1967); Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991).

A union's handling of a grievance may be arbitrary if "it handles a grievance in a 'perfunctory' manner, with caprice or without rational explanation." Poole v. Budd Co., 706 F.2d 181, 183 (6th Cir. 1983); see also Vaca, 389 U.S. at 190 (conduct is arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' ... as to be irrational") (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)). "[M]ere negligence or mistaken judgment is insufficient to establish a breach of the union's duty." Poole, 706 F.2d at 183. Judicial review of a union's conduct "must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." O'Neill, 499 U.S. at 78; see also id. at 77 (Vaca standard applies to challenges to a union's contract administration and enforcement efforts as well as its negotiation performance) (quoting Commc'ns Workers v. Beck, 487 U.S. 735, 743 (1988)).

Here, as described in detail above, the Union expended time and effort in challenging Pruitt's termination and pursuing a grievance through arbitration. The fact

that the Arbitrator found in favor of the Hospital is not indicative of defendants' bad faith. The Union advanced arguments in support of Pruitt's position and was successful in having the Arbitrator agree that Pruitt's termination did not violate HR Policy 0130 pertaining to protected class conduct. The arbitration turned on a factual issue of whether Pruitt made the phone calls and legal issue of whether termination was justified. The Arbitrator carefully considered the record and found against Pruitt.

Moreover, a reasonable juror could not find the fact that the Union chose not to appeal the Arbitrator's decision amounts to bad faith. "Unions are not ... obligated to prosecute grievances that they find to be merciless." Kelley v. FormTech Indus., 305 F. App'x 266, 269 (6th Cir.2008) (citing Williams v. Molpus, 171 F.3d 360, 366–67 (6th Cir.1999)).

Based on the record, the Union's decision not to appeal the Arbitrator's decision falls well within its authority to exercise discretion in representing its members. Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 45–46 (1998) ("This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong."); see also Linton v. United Parcel Serv., 15 F.3d 1365, 1372 (6th Cir. 1994) ("ordinary negligence or mistaken judgment by the union in failing to pursue a grievance is not actionable under section 301").

In short, defendants are entitled to summary judgment on Count II.

### C.  Count III - Intentional Infliction of Emotional Distress

Defendants argue that the Court should declines to exercise supplemental

jurisdiction over this claim or, alternatively, the claim fails for lack of merit.

While the court possesses pendant jurisdiction over Pruitt's state law intentional infliction of emotional distress claim under 28 U.S.C. § 1367(a), that section also provides that a district court may "decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. § 1367(c)(3). "It is generally recognized that where ... federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims." Gaff v. Fed. Deposit Ins. Corp., 814 F.2d 311, 319 (6th Cir.1987).

Where, as here, the Court has dismissed both of Pruitt's original federal claims, the balance of judicial economy, convenience, fairness, and comity all point toward declining supplemental jurisdiction. Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254–55 (6th Cir.1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."). Accordingly, under 28 U.S.C. § 1367(c)(3), this Court will exercise its discretion and will dismiss Pruitt's state law claim without prejudice.

## IV. Motion to Amend

Pruitt proposes to amend her complaint to assert the following claims:

14

Count I    Pruitt was discharged from employment by her employer; Without "just cause"

Count II    Violating 42 U.S.C. § 1985 - conspiracy to interfere with Plaintiff's civil rights. 42 U.S.C. § 1986 - Action for neglect to prevent

Count III    18 U.S.C. § 241 - Conspiracy against rights and 18 U.S.C. § 245 - Federally protected activities

Defendants contend that the motion should be denied because none of these claims could survive a motion to dismiss; therefore, amendment would be futile.

### A. Legal Standards

Under Fed. R. Civ. P. 15(a), a party may amend their pleadings after 20 days "only by leave of court or by written consent of the adverse party; and leave to amend pleadings "shall be freely given when justice so requires." The decision whether or not to permit the amendment is committed to the discretion of the trial court. See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-32 (1971); Estes v. Kentucky Util. Co., 636 F.2d 1131, 1133 (6th Cir. 1980). This discretion, however, is "limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." See Marks v. Shell Oil Co., 830 F.2d 68, 69 (6th Cir. 1987) (citation omitted). In determining whether to permit amendment, some of the factors which may be considered by the district court are undue "delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." Hageman v. Signal L.P. Gas, Inc. 486 F.2d 479, 484 (6th Cir. 1973). See also Foman v. Davis, 371 U.S. 178, 182 (1962). Delay by itself is not

sufficient to deny a motion to amend.  Hageman, 486 F.2d at 484.  See also General Elec. Co. v. Sargent & Lundy 916 F.2d 1119, 1130 (6th Cir. 1990).

Defendant argues that amendment is improper because it would be futile.  A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.  Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div., 987 F.2d 376, 382-83 (6th Cir. 1993).  Thus, it is appropriate to set forth the standard for a Rule 12(b)(6) motion.  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint.  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).  See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 678 (internal quotation marks and citation

omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies may be appended to a motion to dismiss. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007).

### B. Analysis

#### 1. Count I

To the extent Pruitt is claiming that the Union discriminated against her based on race in the way in which it handled her grievance, this claim too fails. The duty of fair representation incorporates a requirement that the union not act discriminatorily. See Emswiler v. CSX Transp., Inc., 691 F.3d 782, 793 (6th Cir.2012). Additionally, Title VII makes it unlawful for a union to deny fair representation based upon race or sex. See 42 U.S.C. § 2000e–2(c)(1); Goodman v. Lukens Steel Co., 482 U.S. 656, 668–69, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). Indeed, district courts in this circuit—following the Seventh Circuit's test in Bugg v. International Union of Allied Industrial Workers of America, Local 507 AFL–CIO, 674 F.2d 595, 598 n. 5 (7th Cir.1982)—have required Title VII plaintiffs to prove that a union breached its duty of fair representation. Beshears v. Hennessey Indus., Inc., No. 3:12–00087, 2012 WL 6093457, at *2 (N.D. Tenn. Dec. 7, 2012); Hout v. City of Mansfield, 550 F.Supp.2d 701, 727 (N.D. Ohio 2008). Therefore, a claim that the duty of fair representation was breached on account of discrimination and a claim of discrimination in failing to fairly represent the employee

17

are essentially the same.

As discussed above, the Union did not breach its duty of fair representation in the manner in which it pursued Pruitt's grievance. It would be futile to permit Pruitt to amend the complaint to add Count I as alleged in the proposed amended.

### 2. Count II

42 U.S.C. § 1985(3) prohibits conspiracies to deprive persons of their civil rights under the law, and is directed at racial or otherwise protected class-based discriminatory animus behind the conspirators' actions. Griffin v. Breckenridge, 403 U.S. 88, 101–02 (1971); United Brotherhood of Carpenters and Joiners of America v. Scott, 463 U.S. 825 (1983). To state a claim under § 1985(3), the complaint must allege a race or class-based discriminatory animus. Newell v. Brown, 981 F.2d 880, 886 (6th Cir.1992). In Gutierrez v. Lynch, 826 F.2d 1534, 1538–39 (6th Cir. 1987), the court clearly stated the well-settled rule "that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim...."

The proposed claim does not meet this standard. Pruitt provides no factual allegations to suggest how defendants and the Hospital, who is not a party, conspired together and does not allege they engaged in class-based discrimination. Pruitt does not allege with specificity any overt acts in the conspiracy and does not include facts which reasonably suggest the alleged conspirators had a "meeting of the minds" to engage in class based discrimination against Pruitt. At best, Pruitt alleges that the Union "intentionally conspired" with the Hospital to terminate her and that they have

worked together to terminate "Black employees." Such allegations are vague and conclusory and do not state a plausible claim for relief.

As to a claim under 42 U.S.C. § 1986, this section provides a cause of action against anyone who neglects to prevent a violation of § 1985. Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc., 803 F.Supp. 1251, 1260 (E.D. Mich. 1992). A colorable conspiracy claim under § 1985 is an absolute prerequisite to an action under § 1986. In other words, "[w]ithout a violation of section 1985, there can be no violation of section 1986." Id.; Browder v. Tipton, 630 F.2d 1149, 1155 (6th Cir.1980). Because the Pruitt has not shown a § 1985(3) violation, any claim under § 1986 would also be dismissed under Rule 12(b)(6).

### 3. Count III

In Count III, Pruitt claims defendants violated 18 U.S.C. §§ 241 and 242. These are criminal statutes for violations of civil rights which do not provide a private right of action. Booth v. Henson, 290 F. App'x 919, 920–21 (6th Cir. 2008) (a private citizen lacks standing to file an action under §§ 241 and 242); United States v. Oguaju, 76 F. App'x 579, 581 (6th Cir.2003) (same); Moore v. Potter, 47 F. App'x 318, 320 (6th Cir. 2002) (no private right of action under § 242); Deal v. Polk County, Tennessee, No. 1:03–CV–385, 2007 WL 1387918, at *14 (E.D. Tenn. May 8, 2007) (§ 245 is a criminal statute "which does not give rise to any civil cause of action") (quoting Marshall v. Johnson, No. Civ. A. 3:05CV2615, 2005 WL 1214254, at *5 (W.D.Ky. May 19, 2005)). Only state or federal prosecutors may bring a complaint under these statutes. Id. As such, Count III does not state a plausible claim for relief.

V. Conclusion

In the end, the record is clear that the Union diligently pursued Pruitt's claim in arbitration. The Arbitrator made a factual determination and legal conclusion unfavorable to Pruitt. No reasonable juror would debate whether the Union or any of the individual defendants violated any of Pruitt's federal rights. Defendants' motion for summary judgment is GRANTED. Pruitt's motion to amend is DENIED.

Counts I and III are DISMISSED WITH PREJUDICE. Count III is DISMISSED WITHOUT PREJUDICE. This case is CLOSED.

SO ORDERED.

                                              S/Avern Cohn
                                              AVERN COHN
                                              UNITED STATES DISTRICT JUDGE

Dated: December 16, 2014
       Detroit, Michigan

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 16, 2014, by electronic and/or ordinary mail.

                                              S/Sakne Chami
                                              Case Manager, (313) 234-5160